IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COREY D. PALSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs | ) Civil Action No. 2:23-1941 |
| | ) |
| SUPERINTENDENT M. ZAKEN, et al., | ) Magistrate Judge Dodge |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Plaintiff Corey D. Palson ("Palson"), who is incarcerated in the State Correctional Institution at Greene, Pennsylvania ("SCI Greene"), brings this pro se civil rights action against ten employees at SCI Greene: Superintendent Zaken; S. Buzas, (Deputy Facility Management); Security Corrections Officer I T. Johnson ("C.O. Johnson"); Security Lieutenant Stickles; Captain E. Hintemeyer; Captain Troyan; Sergeant Palmer; D. Varner (Chief Grievance Officer); Gale Rowe (Medical Staff); and R. Smith (Medical CHCA). Palson raises claims under the Fourth, Sixth and Eighth Amendments to the Constitution via 42 U.S.C. § 1983.

Presently pending before the Court for resolution is Defendants' partial motion to dismiss (ECF No. 18). For the reasons that follow, it will be granted in part and denied in part.[1]

**I. Procedural History**

Palson initiated this action on November 9, 2023 by filing a motion for leave to proceed in forma pauperis. After he submitted the appropriate documents in response to a deficiency order, the motion was granted, and his Complaint was filed (ECF No. 8). Federal question jurisdiction is based on the civil rights claims asserted.

---

[1] The parties have consented to full jurisdiction before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF Nos. 22, 23.)

On May 28, 2024, Defendants filed a partial motion to dismiss (ECF No. 18), which has been fully briefed (ECF Nos. 19, 29).[2]

## II. Factual Background

Palson alleges that, on September 9, 2022, security staff came to his unit with K-9 Handler Sgt. Palmer and K-9 "Lord" to perform searches of inmates and their cells. Palson was strip searched and then escorted to the "Multi-Purpose Room." Sgt. Palmer had Lord circle him and Lord allegedly alerted to the presence of contraband in his posterior. He was then escorted to the "Visiting Strip," where he was placed in a body scanner by C.O. Johnson and scanned twice. C.O. Johnson informed him that something was showing on the scan.

Palson was then taken to medical for x-rays, and the technician stated that something was there but he could not say with "100% certainty" that it was "some significant contraband." When Palson heard C.O. Johnson say something about a dry cell he asked for an attorney, but Johnson refused his request. He was handcuffed and taken to a holding cage outside of the "Visiting Strip." He was placed in "POC Cell 11," which is considered a dry cell. The cell has a metal cover over the toilet and the sink is turned off. He was strip searched and given a thin orange jumpsuit, his hands were handcuffed and placed in a "kufbag" and his leg were placed in shackles. The "kufbag" was placed on him incorrectly and the zip ties were so tight that he could not even have his hands flat with his palms facing his legs. He was unable to stand up straight and had to be hunched over the entire time, and could not sleep on his back.

After a few moments, Palson started to feel a burning sensation on his forehead (which he had placed on a plastic desk), then on his thighs, butt cheeks and testicles from OC spray residue that was all over the cell, including in the "kufbag." He cried out and screamed to be let out of

---

[2] Defendants do not seek dismissal of the Fourth Amendment claim against C.O. Johnson and Sgt. Palmer. (ECF No. 19 at 2.)

2

the "kufbag" and the cell because it was coated with OC spray, but the guards and medical staff responded that, since no OC spray was actually deployed on him, they would not take any action.

On September 11, 2022, the third day of his confinement in the dry cell, Palson provided three clean bowel movements after being given multiple laxatives. At that time, he was given some "baby wipes" which he used to try to clean the OC spray from the "kufbag" and items in the cell. The next day, Palson was again taken to be x-rayed, but the technician stated that the "object" had not moved since the last x-ray and appeared to be in his bladder. Superintendent Zaken told him that, in order to be released, he had to provide one more clean bowel movement, which he did later that day.

Palson claims that he was falsely accused of hiding drugs in his body and forced to be exposed and defecate in front of others. He was humiliated and disrespected by guards making jokes and calling him a "faggot" because they believed that "only faggots stick things up their asses." After this incident, whenever a K-9 search is performed, he is taken for a body scan. He asserts that he suffers from PTSD because he experiences a panic attack every time he sees a K-9 for fear it will falsely alert to him and he will be placed in a dry cell. He contends that he should not have been subjected to this treatment and that the security staff should have acquired the professional opinion of someone who is qualified to review x-rays, such as a radiologist, rather than a technician. If that had occurred, a professional would have reported that the alleged "object" was in his bladder and he would not have been placed in a dry cell.

Palson alleges that these actions violated his rights under the Fourth Amendment (unreasonable seizure of his person), the Sixth Amendment (denial of his request for counsel) and the Eighth Amendment (cruel and unusual punishment based on the conditions in the dry cell). He seeks damages for physical and psychological pain and suffering and an order

transferring him to another institution. (Compl. § II(D).)

**III.     Standard of Review**

Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations ... a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As noted by the Court of Appeals for the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged.

The Supreme Court has stated that "the allegations of [a] pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted).

4

IV.  **Discussion**

   A. **Section 1983 Claims**

Palson's civil rights claims are asserted under 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). *See also Baker*, 443 U.S. at 140; *Graham v. Connor*, 490 U.S. 386, 394 (1989).

The Complaint alleges violations of Palson's rights under the Fourth Amendment, which prohibits unreasonable searches and seizures, the Sixth Amendment, which provides for the right to an attorney "in all criminal prosecutions," and the Eighth Amendment, which prohibits "cruel and unusual punishment."

   1. Sixth Amendment Claim

The Sixth Amendment provides that an accused individual shall enjoy the right to have the assistance of counsel "in all criminal proceedings." *See Kirby v. Illinois*, 406 U.S. 682, 690 (1972) (holding that Sixth Amendment guarantees only apply to "criminal prosecutions").

Palson alleges that he requested a lawyer and his request was denied. Because he was not subjected to a criminal proceeding, however, the Sixth Amendment does not apply and his civil rights were not violated.[3] Therefore, the Sixth Amendment claim will be dismissed.

   2. Eighth Amendment Claim

Defendants also move to dismiss Palson's Eighth Amendment claim relating to his confinement to a dry cell for four days and placement in overly tight handcuffs and a "kufbag"

---

[3] Palson concedes in his response that he cannot state a claim under the Sixth Amendment. (ECF No. 29 at 6.)

which contained OC spray residue.

The Eighth Amendment "prohibits any punishment which violates civilized standards and concepts of humanity and decency." *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992), *superseded by statute on other grounds as stated in Nyhuis v. Reno*, 204 F.3d 65, 71 n.7 (3d Cir. 2000) (citations omitted).

To prevail against prison officials on a claim that an inmate's conditions of confinement violated the Eighth Amendment, an inmate must meet two requirements: (1) the deprivation alleged must be, objectively, "sufficiently serious," and (2) the "prison official must have a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks and citations omitted). The first element is satisfied when an inmate is deprived of "the minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 299 (1991). The second element is satisfied when an inmate shows that prison officials acted with deliberate indifference to the inmate's health or safety or conditions of confinement that violated the inmate's constitutional rights. *Id.* at 302-03.

"The Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes, cannot be free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347. Further, as relevant here, the Court of Appeals in *Thomas v. Tice*, 948 F.3d 133 (3d Cir. 2020), has held that "even though administrative confinement in a dry cell[4] is unpleasant and often

---

[4] As explained by the Court of Appeals, a dry cell "is a cell that lacks water. . . An inmate may be placed in a dry cell when prison staff have observed the inmate attempt to ingest an item of contraband or they learn that the inmate is attempting to introduce contraband into the prison. Dry cells are used to closely observe the inmate until natural processes allow for the ingested contraband to be retrieved. To this end, dry cells lack all linens and moveable items other than a

unsanitary, so long as the conditions of that confinement are not foul or inhuman, and are supported by some penological justification, they will not violate the Eighth Amendment." *Id.* at 139 (citing *Young*, 960 F.2d at 364).[5]

In their motion, Defendants argue that placement in a restricted section of a prison does not in itself violate the Eighth Amendment. *See Williams v. Armstrong*, 566 F. App'x 106, 109 (3d Cir. 2014) (because the Eighth Amendment applies only when a deprivation results in the denial of "the minimal civilized measure of life's necessities," placement of prisoner in RHU for 112 days alone, without allegation that he was denied life's necessities, did not state a claim for relief); *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997).

The Court agrees. However, Plaintiff has not merely alleged that he was placed in restrictive housing. Rather, he contends that he was subjected to severe conditions for four days, including being placed in a dry cell, naked, shackled and too tightly handcuffed. Further, he claims that he was exposed to OC spray residue in the "kufbag" and in other locations in the cell, causing him serious pain. When he complained about these conditions, he claims that he was told that nothing would be done because no OC spray had been deployed on him. Even after he provided three clean bowel movements and an x-ray showed that the "object" was in his bladder,

---

mattress, inmates' clothes are exchanged for a simple smock, and their movements are carefully controlled to prevent them from concealing or disposing of any retrievable contraband." *Id.* at 137.

[5] In *Thomas,* after a guard believed that he saw Thomas ingest contraband, he was immediately handcuffed and placed in a dry cell. Over the next four days, he had multiple bowel movements and an x-ray was also taken. No evidence of any contraband was found. On the fourth day, the Program Review Committee ("PRC") met and interviewed Thomas, after which it continued his confinement for five more days but provided no reason for this decision. The Third Circuit affirmed the decision of the district court to grant summary judgment in favor of the PRC members because there was no evidence that they were personally involved in the alleged deprivations. At the same time, however, the court reversed the district court's grant of summary judgment in favor of defendants with respect to Thomas's challenge to the duration of his confinement in the dry cell, particularly since the PRC provided no basis for its decision that Thomas remain there for an additional five days.

and therefore, was not contraband, Superintendent Zaken made him stay in the dry cell until he produced another clean bowel movement.

The Court concludes that accepting the factual allegations in the Complaint as true solely for purposes of a motion to dismiss, Palson has adequately stated an Eighth Amendment claim. While an appropriate use of a dry cell is not violative of Palson's constitutional rights, he asserts that over a period of four days, his restraints were improperly and painfully secured, he was exposed to OC spray residue, and that his resulting complaints of serious pain were ignored. If true, this could support an Eighth Amendment claim. *See Hope v. Pelzer*, 536 U.S. 730, 737(2002) ("[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.").[6]

Therefore, with respect to the Eighth Amendment claim, the motion to dismiss will be denied.

3. Individual Involvement

The Court of Appeals has held that "to be liable under § 1983, each individual defendant "must have personal involvement in the alleged wrongdoing." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207. These allegations must be made with appropriate particularity. *Id.* Further, "a civil rights complaint is adequate where it states the conduct, time, place, and persons responsible." *Evancho,* 423 F.3d at 353. Moreover, in a civil

---

[6] "The use of chemical agents to subdue recalcitrant prisoners is not cruel and unusual when reasonably necessary." *Gibson v. Flemming*, 837 F. App'x 860, 862 (3d Cir. 2020) (citation omitted). Here, however, it appears that Palson asserts that OC spray residue was left in the cell and "kufbag" from the last time it was used, and despite his complaints of pain, nothing was done.

rights case, "liability cannot be predicated solely on the operation of *respondeat superior*." *Rode*, 845 F.2d at 1207.

Although Palson states that he filed a grievance regarding his confinement in the dry cell, he has not stated a claim against Defendant Varner, the Grievance Officer who reviewed his grievance. "It is . . . well established that the filing of a grievance is not sufficient to show the actual knowledge necessary for a defendant to be found personally involved in the alleged unlawful conduct." *Mearin v. Swartz*, 951 F. Supp. 2d 776, 782 (W.D. Pa. 2013). *See also Jefferson v. Wolfe*, 2006 WL 1947721, at *17 (W.D. Pa. July 11, 2006); *Watkins v. Horn*, 1997 WL 566080, at *4 (E.D. Pa. Sept. 5, 1997).

Likewise, Defendants further contend that other than naming them in the caption and identifying them in the body of the Complaint, Palson fails to allege any facts or the personal involvement in the alleged violation of his civil rights with respect to Defendants S. Buzas, Lt. Stickles, Captain E. Hintemeyer, Captain Troyan, D. Varner, Gale Rowe, and R. Smith. In his response, Palson concedes that he cannot state a claim against Varner, Gale Rowe or R. Smith. (ECF No. 29 at 4-5.) Accordingly, Defendants Varner, Rowe and Smith will be dismissed with prejudice.

With respect to Defendants Buzas, Stickles, Hintemeyer and Troyan, Palson responds that he believes they were involved but needs discovery to determine who made the decision to have him placed in the dry cell and in the "kufbag." However, Plaintiff cannot simply name defendants without any allegations of their involvement in his claims. Thus, because Palson has failed to allege any role, action or personal involvement by these defendants regarding the conditions of his confinement, they will be dismissed without prejudice. At the same time, given Plaintiff's acknowledgement that he does not know who engaged in the activities that form the

basis for his claims, he may amend his complaint to name one or more "John Does" and provide factual allegations regarding the alleged wrongful conduct of each Doe defendant named.

Finally, Defendants argue that Palson cannot state a claim against Superintendent Zaken based solely on his role of being a supervisor. While this is correct, Palson has alleged that Zaken, the facility manager, was actually responsible for determining that he was required to remain in the dry cell longer than necessary. According to Palson, even though he had already had three clean bowel movements a subsequent x-ray revealed that the "object" was in his bladder, Superintendent Zaken told him that, in order to be released, he had to provide one more clean bowel movement.

Thus, Palson has pleaded Zaken's personal involvement and similar to the Third Circuit's holding in *Thomas*, it is at least plausible at the motion to dismiss stage that Palson has stated a claim against Zaken for violation of the Eighth Amendment because Zaken required him to remain in the dry cell without any reasonable basis for doing so. As a result, Defendants' motion as to Zaken is denied but may be renewed at a later point in these proceedings.

V. **Conclusion**

For these reasons, Defendants' partial motion to dismiss will be granted in part as follows:

1. The Sixth Amendment claim will be dismissed with prejudice.
2. Defendants Varner, Rowe and Smith will be dismissed with prejudice.
3. Defendants Buzas, Stickles, Hintemeyer and Troyan will be dismissed without prejudice. Plaintiff may amend his Complaint by naming one or more defendants identified as "John Doe."

The partial motion to dismiss will be denied with respect to the Eighth Amendment claim against Defendant Zaken

An appropriate order follows.


Dated: October 28, 2024                          /s/ Patricia L. Dodge
                                                 Patricia L. Dodge
                                                 United States Magistrate Judge


cc:     Corey D. Palson
        QP-6316
        SCI Greene
        169 Progress Drive
        Waynesburg, PA 15370

11